UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT E. LITTLE, and            )
KATHLEEN D. LITTLE,              )
                                 )
       Plaintiffs,               )
                                 )
   v.                            )    No. 3:16-cv-02758
                                 )    CHIEF JUDGE CRENSHAW
WYNDHAM WORLDWIDE                )
OPERATIONS, INC., WYNDHAM        )
VACATION RESORTS, INC.,          )
WYNDHAM VACATION                 )
OWNERSHIP, INC., and             )
CHRISTOPHER CLABOUGH,            )
                                 )
       Defendants.               )

## MEMORANDUM OPINION

Pending before the Court is Plaintiffs' Motion to Remand (Doc. No. 16), to which Defendants have responded in opposition (Doc. No. 21), and Plaintiffs have replied (Doc. No. 33). For the reasons that follow, Plaintiffs' Motion will be granted and this case will be remanded to state court.

### I. Background

This litigation asserting common law and statutory claims under Tennessee law was filed in the Chancery Court for Davidson County on October 14, 2016. Plaintiffs, Robert E. and Kathleen D. Little, are citizens of the state of Illinois. (Doc. No. 1-1, Chancery Complaint). Named as Defendants are Wyndham Worldwide Operations, Inc., which is alleged to be a Delaware corporation with its principal place of business in New Jersey, and Wyndham Vacation Resorts, Inc. and Wyndham Vacation Ownership, Inc., both of which are alleged to be Delaware corporations

1

with their principle places of business in Florida. (Id. ¶¶ 2-4). Also named as a Defendant is Christopher Clabough, who is alleged to be a licensed sales agent for the Wyndham Defendants and a Tennessee resident. (Id. ¶¶5, 8(h)). Four business days after suit was filed, the Wyndham Defendants removed the action to this Court on diversity jurisdiction grounds,[1] even though Defendant Clabough had yet to be served with process.

Plaintiffs now move to remand, arguing that those Defendants are attempting "to game the system" by "watching the [state] court dockets and quickly removing cases before anyone can even be served" in order to bypass the forum defendant rule. (Doc. No. 33 at 2). Plaintiffs ask this Court to prohibit "big corporate giants like Wyndham" from engaging in "jack rabbit removal to defeat the purpose of Congressional intent,"[2] and to remand the case to the Chancery Court from whence it originated for lack of diversity jurisdiction. (Id.). Plaintiffs also contend that the Court should "ignore" the Wyndham Defendants' "lame argument" that federal question jurisdiction exists under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, characterizing the argument as being "embarrassingly specious, even for a sneaky corporate defendant." (Id. at 5). Although the Court finds such hyperbole unnecessary, it agrees that remand is appropriate.

---

[1] The Court notes that, "[i]n order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." Newman–Green, Inc. v. Alfonzo–Larrain, 490 U.S. 826, 828 (1989). While the Complaint in this case only alleges that Plaintiffs are residents of Illinois and that Defendant Clabough resides and works in Tennessee, the Wyndham Defendants do not suggest that those individuals are domiciled elsewhere. In fact, the Wyndham Defendants specifically assert in their removal papers that the Littles are Illinois residents and that Clabough's "citizenship in the forum state does not preclude removal under 28 U.S.C. § 1441(b)(2)." (Doc. No. 1, Notice of Removal ¶¶ 1, 7).

[2] Some courts refer to removal before service of process as "jack rabbit removal," see e.g., Schilmiller v. Medtronic, Inc., 44 F. Supp. 3d 721, 727 (W.D. Ky. 2014), while others refer to the practice as "snap removal," see e.g., Smethers v. Bell Helicopter Textron, Inc., 2017 WL 1277512, at *1 (S.D. Tex. Apr. 3, 2017).

2

## II. Analysis

Diversity jurisdiction is conferred by 28 U.S.C. § 1332 that provides shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs and is – (1) against citizens of different states." 28 U.S.C. § 1332(a)(1). Under this statute, "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff," Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978), as is alleged to be the case here.

A defendant sued in state may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Specifically with regard to diversity jurisdiction, however, Section 1441(b) of the removal statute – also known as the "forum defendant rule" – provides:

> **(b) Removal based on diversity of citizenship**.--
>
> (1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.
>
> (2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C.A. 1441(b).

The Wyndham Defendants argue that removal was proper based upon both the plain language of § 1441(b)(2) and the Sixth Circuit's decision in McCall v. Scott, 239 F.3d 808 (6th Cir. 2001). While both sources provide a colorable basis for their decision to remove when they did, the Court finds that McCall is not controlling and that permitting the Wyndham Defendants' removal

would thwart the underlying purpose for the forum defendant rule.

In McCall, the Sixth Circuit stated that "[w]here there is complete diversity of citizenship, as [plaintiff] concedes there was, the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)." 239 F.3d at 809 n.2. However, that statement–made without any further elaboration and relegated to a footnote–has repeatedly been characterized as dicta, both within and outside the Sixth Circuit, and is therefore not necessarily followed. See e.g. Breitweiser v. Chesapeake Energy Corp., 2015 WL 6322625, at *3 (N.D. Tex. Oct. 20, 2015); Arrington v. Medtronic, Inc., 130 F. Supp. 3d 1150, 1155 (W.D. Tenn. 2014); In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig., 2012 WL 2919219, at *3 (E.D. Ky. July 17, 2012); Goodwin v. Reynolds, 2012 WL 4732215, at *8 (N.D. Ala. Sept. 28, 2012); NFC Acquisition LLC v. Comerica Bank, 640 F. Supp. 2d 964, 969 n.3 (N.D. Ohio 2009).

Additionally, the facts in McCall were entirely different from those that usually underlie jack rabbit or snap removals. Unlike the typical situation where a large corporate defendant monitors local state filings and promptly removes actions filed against it, McCall involved a situation where "the derivative shareholder actions brought against non-forum defendants were already in federal district court at the time of removal by the forum defendant." Harrison v. Wright Med. Tech., Inc., 2015 WL 2213373, at *6 (W.D. Tenn. May 11, 2015) (citing McCall, 239 F.3d at 813 n.1).

Apart from McCall, there is a dearth of appellate authority construing the "properly joined and served" language of § 1441(b)(2) because orders remanding cases are, by statute, non-reviewable. Harvey v. Shelter Ins. Co., 2013 WL 1768658, at *1 (E.D. La. Apr. 24, 2013); see, Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 229 (2007) ("The authority of appellate courts to review district-court orders remanding removed cases to state court is substantially limited

4

by statute."). For their part, district courts have struggled with the issue, leading to conflicting results, not only nationwide, but among the district courts in the Sixth Circuit, and even within at least one district in this circuit. See Margetta v. Medtronic, Inc., 2013 WL 12149654, at *2 (W.D. Tenn. Nov. 21, 2013) ("There is a split within this Circuit as to the issue of a defendant's removal prior to service."); compare Linder v. Medtronic, Inc., 2013 WL 5486770, at *1 (W.D. Tenn. Sept. 30, 2013) (holding "there is nothing in the removal statute that precludes [Defendant] from filing a notice of removal prior to Plaintiff effecting service of process upon it") with Montgomery v. Medtronic Sofamor Danek USA, Inc., 2014 WL 12611256, at *4 (W.D. Tenn. June 26, 2014) (holding that defendants' prompt removal prior to service of process on an in-state defendant was improper). This Court has yet to consider the issue, but does so now.

Generally speaking, trial courts addressing the issue take one of two approaches. Many woodenly apply the "properly joined and served" language and permit pre-service removal, being of the view that this is in keeping with the literal language of the statute.[3] See, e.g., Rogers v. Boeing Aerospace Operations, Inc., 13 F. Supp. 3d 972, 978 (E.D. Mo. 2014) ("Under the plain, unambiguous language of Section 1441(b)(2), an out-of-state defendant may remove a diversity case if at least one defendant – and no forum defendant – has been served."); Harvey, 2013 WL 1768658,

---

[3] Defendants argue that this is the majority rule, relying on In re Darvocet, 2012 WL 2919219 at *2, Brake v. Reser's Fine Foods, Inc., 2009 WL 213013, at *3 (E.D. Mo. Jan. 28, 2009); Massey v. Cassens & Sons, Inc., 2006 WL 381943, at *2 (S.D. Ill. 2006); and Ott v. Consol Freightways Corp., 213 F. Supp. 2d 662, 665 (S.D. Miss. 2002). Those cases, however, were rendered between five and fifteen years ago and it is unclear whether this remains the majority rule given that snap removals continue to be a hotbed of discussion and a source of debate as evidenced by the number of opinions that have been issued since then. In fact, it has been observed that "[s]nap removal appears to be an emerging litigation tactic," Breitweiser, 2015 WL 6322625, at *3, and that "the growing trend among district courts wrestling with this latest litigation fad is to grant a timely motion to remand," Ethington v. Gen. Elec. Co., 575 F. Supp. 2d 855, 863 (N.D. Ohio 2008). At a minimum, there is clearly a "split in authority on the issue, with a number of courts" rejecting the literal interpretation approach. In re Testosterone Replacement Prod. Liab. Litig., 67 F. Supp.3d 952, 959 (E.D. Ill. 2014).

5

at *2 (stating that "§ 1441(b)(2) plainly provides that a civil action may not be removed if any defendant that has been joined and served is a forum defendant," and that "the plain language of the statute must prevail over the plaintiff's policy arguments to the contrary"); Holmes v. Lafayette, 2013 WL 654449, at *1 (N.D. Miss. Feb. 21, 2013) ("The plain language of the statute provides that the forum defendant be 'properly joined and served' to prevent removal."); Ott, 213 F. Supp.2d at 666 (stating that, "in accordance with the plain language of § 1441(b), courts have held, virtually uniformly, that where, as here, diversity does exist between the parties, an unserved resident defendant may be ignored in determining removability under 28 U.S.C. § 1441(b)").

Many other district courts prohibit pre-service removal when there is a resident defendant, being of the opinion that this is in keeping with Congress's intent. See e.g., In re Testosterone Replacement, 67 F. Supp. 3d at 959 ("The Court finds the cases that rely on the underlying purpose of the forum-defendant rule more persuasive than those that simply apply its language."); Vallejo v. Amgen, Inc., 2013 WL 12147584, at *3 (C.D. Cal. Aug. 30, 2013) ("If defendants were permitted to remove a case before the plaintiff even had the opportunity to serve them, this would effectively circumvent Congress's entire statutory scheme and render § 1441(b)(2) superfluous. Such an application could not have been intended by Congress."); Fields v. Organon USA Inc., 2007 WL 4365312, at *4–5 (D.N.J. Dec. 12, 2007) (concluding that "[t]he result of blindly applying the plain 'properly joined and served' language of § 1441(b) is to eviscerate the purpose of the forum defendant rule"); Vivas v. Boeing Co., 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007) (stating that permitting pre-service removal in violation of the forum defendant rule would be "against what the courts have long understood to be Congress's intent").

Because a thorough review of the reasoning behind the differing approaches can be found

in cases such as Breitweiser, 2015 WL 66322625, at *2-7, Phillips Const., LLC v. Daniels Law Firm, PLLC, 93 F. Supp.3d 544, 547-556 (N.D.W. Va. 2015), and In re Testosterone Replacement, 67 F. Supp. 3d at 958-92, the Court finds it unnecessary to rehash that which has already been covered. Instead, the Court turns to why it believes that pre-service or snap removal is improper.

The analysis necessarily begins with the language of § 1441(b)(2) given "[t]he controlling principle" and "the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476 (1992). To reiterate, the statute provides that a diversity action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). While some courts, as already noted, consider the phrase "properly joined and serve" to clearly allow for pre-service removal, this may only be true by applying a negative hypothesis. That is, the statute speaks of when an action cannot be removed, not when it can be removed.

Regardless, "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (citation omitted). "A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' . . . and 'fit, if possible, all parts into an harmonious whole.'" Id. Furthermore, "[i]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." Guzman v. U.S. Dep't of Homeland Sec., 679 F.3d 425, 432 (6th Cir. 2012) (citation omitted).

Applying those cannons of statutory construction, the Court concludes that snap removal

7

thwarts the purpose of the forum defendant rule. The Court does so for five interrelated reasons.

First, "[s]eparate and apart from the statute conferring diversity jurisdiction, 28 U.S.C. § 1332," the forum defendant rule "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 939 (9th Cir. 2006). This an offshoot of the underlying reason behind the perceived need for diversity jurisdiction, to wit, protecting out-of-state defendants from homegrown, local juries. "In other words, the forum defendant rule disallows federal removal premised on diversity in cases where the primary rationale for diversity jurisdiction 'to protect defendants against presumed bias of local courts' is not a concern because at least one defendant is a citizen of the forum state." Morris v. Nuzzo, 718 F.3d 660, 665 (7th Cir. 2013) (citation omitted); see Allen v. GlaxoSmithKline PLC, 2008 WL 2247067, at *4 (E.D. Pa. May 30, 2008) ("With an in-state defendant, the likelihood of local bias is reduced, if not eliminated, and removal to a federal forum is not warranted.").

The inclusion of the "properly joined and served" language in § 1441(b)(2) also helps to insure that plaintiffs do not manufacture state court jurisdiction "by naming as a second defendant in the Complaint (i.e. 'joining') an in-state defendant that the plaintiff had no honest intention of pursuing in litigation, never intended to serve, and in fact did not serve with process." Allen, 2008 WL 2247067, at *11; see Stan Winston Creatures, Inc. v. Toys R Us, Inc., 314 F. Supp. 2d 177, 181 (S.D.N.Y.2003) ("The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve."). In short, it helps to "avoid gamesmanship by preventing plaintiffs from joining forum defendants merely to preclude federal jurisdiction." Allen, 2008 WL 2247067, at *4. If, however, the rule is read to allow snap removals, this could encourage

8

"defendants to engage in a different gamesmanship – racing to remove before service of process is effected on the forum defendant." Magallan v. Zurich Am. Ins. Co., 2017 WL 111308, at *3 (N.D. Okla. Jan. 11, 2017). Stated more bluntly,

> the result of blindly applying the plain "properly joined and served" language of § 1441(b) is to eviscerate the purpose of the forum defendant rule. It creates a procedural anomaly whereby defendants can always avoid the imposition of the forum defendant rule so long as they monitor the state docket and remove the action to federal court before they are served by the plaintiff. In other words, a literal interpretation of the provision creates an opportunity for gamesmanship by defendants, which could not have been the intent of the legislature in drafting the "properly joined and served" language.

Fields, 2007 WL 4365312, at *5. In the view of many courts, this produces "absurd results." Phillips Const., 93 F. Supp.3d at 553; Swindell-Filiaggi v. CSX Corp., 922 F. Supp. 2d 514, 516 (E.D. Pa. 2013); Vallejo, 2013 WL 12147584, at *3; In re Darvocet, 2012 WL 2919219, at *3; Ethington, 575 F. Supp. 2d at 863.

Second, "[p]re-service removal by means of monitoring the electronic docket smacks more of forum shopping by a defendant, than it does of protecting the defendant from the improper joinder of a forum defendant that plaintiff has no intention of serving." Perez v. Forest Labs., Inc., 902 F.Supp. 2d 1238, 1242 (E.D. Mo. 2012). This possibility is something Congress certainly could not have envisioned when it enacted the present version of § 1441(b)(2) in 1943. See id. (noting the year of enactment and observing that Congress could not have foreseen "the tremendous loophole" exploited by "defendants who monitor state dockets").

Third, permitting snap removals "would result in the elimination of the forum defendant rule" in some states "at least for the vigilant defendant," In re Testosterone Replacement, 67 F. Supp. 3d at 962, and result in unequal treatment depending upon location. This is because, in many states, process is served by the county sheriff or other authorized agents, but "recordkeeping and

9

docketing technology is several generations ahead of th[is] procedure." Id.; see Ethington, 575 F.Supp. at 863 ("[R]igidly applying the plain meaning of the forum defendant rule's test would be especially inequitable in states such as New Jersey which do not even allow for perfecting service until the clerk's office has processed the complaint and issued a TAN number (or its equivalent in states other than New Jersey)."). Certainly, Congress did not intend to allow different results depending upon the jurisdiction in which a case is filed.

Fourth, snap removals can preempt the provision of § 1441(a) that permits removal only for "pending" cases. As one court has recently explained:

> To qualify for removal, a civil action must be "pending" in state court. See 18 U.S.C. § 1441(a). But in many states, a suit is not "pending" until service has been effectuated. For instance, both Kansas and Kentucky require issuance of a summons before the "commencement" of an action. . . . In other states, however, an action is "commenced" by filing a complaint. . . . Reading the removal statute to require service of some defendant ensures uniformity. Under such a construction, the availability of a federal forum does not vary on a state-by-state basis, an outcome that does not appear contemplated by statute.

In re Jean B. Mcgill Revocable Living Trust, 2017 WL 75762, at *2 (N.D. Okla. January 6, 2017); accord, Hawkins v. Cottrell, Inc., 785 F. Supp. 2d 1361, 1371-72 (N.D. Ga. 2011) (finding for purposes of § 1441(a) that, "under Georgia law, an action is not 'pending' suit until after service of process is perfected"). Again, Congress could not have intended to allow different results based on location.

Fifth, the removal statutes "are to be strictly construed," Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 32 (2012), and the removing party "bears the burden of establishing its right thereto," Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 337 (6th Cir. 1989). Further, any doubt about the propriety of removal must be resolved in favor of remand. Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 405 (6th Cir. 2007);

Jacada, Ltd. v. Int'l Mktg. Strategies, Inc., 401 F.3d 701, 704 (6th Cir. 2005). The sheer number of cases that disapprove of snap removals themselves makes the propriety of removal in this case doubtful.

Ultimately, "'[s]tatutory construction ... is a holistic endeavor'" that requires a court to "select a meaning [that] produces a substantive effect that is compatible with the rest of the law." Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 985 (2017) (quoting United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371 (1988)). Based upon the statutory scheme, the Court finds that permitting snap removals when a forum defendant is sued runs counter to the reasons underlying the forum defendant rule and is not a result that Congress could have envisioned, let alone countenanced, when it enacted the rule to protect out-of-state defendants from local juries.

Two points remain for consideration. In their response brief, the Wyndham Defendants argue that even if removal on diversity grounds was improper, the Court should retain the case because of the existence of federal question jurisdiction. This argument fails at the outset because 28 U.S.C. § 1446 requires that a notice of removal "contain[] a short and plain statement of the grounds for removal." In this regard, "[a] defendant generally is required to cite the proper statutory basis for removal and to allege facts from which a district court may determine whether removal jurisdiction exists." Pet Quarters, Inc. v. Depository Trust & Clearing Corp., 559 F.3d 772, 778 (8th Cir. 2009). Here, the only listed basis for removal was diversity jurisdiction. Likewise, the Civil Cover Sheet attached to Defendants' Notice of Removal only listed diversity jurisdiction. (Doc. No. 1-4 at 1).

Furthermore, under the well-pleaded complaint rule, "a federal question must appear on the

11

face of the complaint," Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 554 (6th Cir. 2012) and "the party invoking federal jurisdiction has the burden to prove that jurisdiction." Glob. Tech., Inc. v. Yubei Power Steering Sys. Co., 807 F.3d 806, 810 (6th Cir. 2015). None of the fifteen counts in the Chancery Court Complaint raises a federal claim–TILA is only mentioned in passing, apparently to show that sales agents glossed over the lending requirements when doing closings. Although " a federal question may arise out of a state law case or controversy if the plaintiff asserts a federal right that 1) involves a substantial question of federal law; 2) is framed in terms of state law; and 3) requires interpretation of federal law to resolve the case," Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 377 F.3d 592, 595 (6th Cir. 2004), Defendants have not come close to showing that to be the case here.

Finally, Plaintiffs move for an award of attorneys' fees under 28 U.S.C. § 1447©, which provides that a court *may* award fees and costs when remanding a case. The Supreme Court has interpreted the clause to mean that fees and costs should only be awarded "where the removing party lacked an objectively reasonable basis for seeking removal," but denied "when an objectively reasonable basis exists[.]" Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

Just as the sheer number of cases that disapprove of snap removals made removal of this case doubtful, the sheer number of cases that go the other way made snap removal objectively reasonable. This is particularly so given the language in McCall and the fact that construction of the "properly joined and served" language of § 1441(b)(2) in the context of a snap removal is a matter of first impression for this Court and apparently this district.

### III. Conclusion

On the basis of the foregoing, Plaintiffs' Motion to Remand (Doc. No. 16) will be granted,

and this case will be remanded to Chancery Court.  Plaintiffs' incorporated request for attorney's fees will be denied.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW
CHIEF UNITED STATES DISTRICT JUDGE